## THE COUNCIL GROVE, OSAGE CITY & OTTAWA RAILWAY COMPANY v. MARY CENTER.

1. RAILROAD RIGHT-OF-WAY—*Injury to Improvements* — *Evidence.* Where an appeal is taken from an award of damages by commissioners in condemning a right-of-way for a railroad, and where it is shown that certain buildings on the plaintiff's premises were greatly damaged by reason of the proximity of the road thereto, as an element of damages it is error for the court to permit plaintiff to show what it would cost to erect other buildings at other suitable places on the farm, and adequate to the use of the farm. The evidence in such a case must be confined to the injury to the improvements, without regard to what it would cost to erect others, suitable and adequate.

2. HUSBAND AS WITNESS — *Limits of Examination.* Where an action is brought by the wife, and the husband who is not a party or interested in the action is introduced as a witness in her behalf, the examination of such witness must be confined strictly to transactions in which the husband acted as the agent of the wife.

### *Error from Franklin District Court.*

THE *Council Grove, Osage City & Ottawa Railway Company,* by proper proceedings, caused to be condemned a strip of land through the farm of *Mary Center,* and she was awarded $390 as damages, from which award she appealed to the district court. Trial at the January term, 1887, and verdict and judgment for the plaintiff for $1,005.23. The *Railway Company* brings the case here.

*W. A. Johnson,* for plaintiff in error.

*J. W. Deford,* and *C. B. Mason,* for defendant in error.

Opinion by CLOGSTON, C.: Plaintiff in error now complains of the judgment of the court below upon the appeal from the award of damages. A great number of errors are alleged and complained of, many of which we deem not well taken, while others are not of sufficient importance to require a reversal of the action. The principal error we find in the record, and which in our judgment requires a reversal of the action, is as follows: At the trial of the cause the plaintiff

produced one Donahue as a witness, who among other things was asked and answered the following questions:

"Q. Are you acquainted with the construction of the barn as it stands there? A. Yes, sir.

"Q. What would you say as to whether it could be removed or not? A. I think it would be totally wrecked to remove it, or to undertake to remove it; it would have to be torn down.

"Q. Is it constructed on foundations? A. No, sir.

"Q. Do you know what the cost would be on the construction of a barn of the same dimensions as that, and adequate for the use of that farm? A. Built in the same manner as that is?

"Q. Yes, sir. A. Well, no, sir; I would say nobody could build a barn like that.

"Q. I want to know what would be the cost of a barn of these dimensions, which seems to be adequate for the use of the farm; I don't care whether it is exactly like that one or not. A. I think I could make a rough estimate of it.

"Q. What would it cost to build? A. You mean built on a frame?

"Q. Built as you would build a barn adequate in size, taking the same dimensions as this barn, but supposing a new barn was to be built. A. That was fourteen feet, I believe, and eight feet high; I want the dimensions; I don't remember how long it is. Besides, Mr. Mason is asking for a different kind of a barn.

"Q. You have said it would be a total wreck to move it, and I don't see how you can build a barn out of a total wreck, so of course I want a different kind of a barn. Taking the same dimensions and building a barn adequate in size to the uses of the farm, what would be the cost? A. About $400."

These questions and answers were objected to by the defendant, and overruled by the court. We think this evidence was entirely incompetent. It was evidence tending to show what it would cost to build a barn adequate for the use of the farm. It threw no light upon the value of the barn already upon the premises, and if this barn that was on the premises had become useless by reason of the proximity of the railway to it, that fact could be shown to the jury; but it would in no wise aid in determining that fact to determine

what a new barn adequate to the uses of the farm would cost. It might have been shown what it would cost to move this barn and place it at a point where it would be of use to the farm, or its value where it stood, and its value as it stood before and after the road was constructed. These would have been elements of damage, and proper to go to the jury.

As this case must go back for a new trial, in addition to what we have said it may be well to say that in determining the damage to a farm it is proper to take into consideration every element of damages that can be reasonably anticipated before the building of the road, and which are reasonably apparent after the construction. This includes inconvenience in crossing, the raising of embankments, the digging of ditches, pools of stagnant water, the obstruction of surface-water by throwing it into channels or by damming it up. These are all proper elements to be considered in determining the damages to land. And finally, the measure of damage is the difference in the market value of the farm before and after the construction of the road.

Plaintiff in error also insists that the court erred in permitting the husband of the plaintiff below to testify as to the location, situation and purposes for which the farm was used, the amount of stock kept thereon, the things tending to show damage by reason of the construction of the road. Much of this testimony we think was incompetent. The husband of a plaintiff could only testify as to things about which he acted as the agent of his wife. Things that he did, and had a peculiar knowledge of, by reason of the agency would be competent. The evidence admitted, however, was cumulative only, and not perhaps of itself sufficient to require a reversal. Care should be taken, however, in this class of cases to confine the inquiry of such witnesses within the limits prescribed by statute.

It is therefore recommended that the cause be reversed, and remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.